EXHIBIT A

STATE COURT CASE FILE

NYSCEF

New York County Supreme Court

**Document List**

**Index #   950235/2019**

Created on:02/17/2020 05:47 PM

Case Caption:   **JAN GREGORY JANOWSKI v. NATIONAL BOY SCOUTS OF AMERICA FOUNDATION a/k/a THE BOY SCOUTS OF AMERICA et al**

Judge Name:

| Doc# | Document Type/Information | Status | Date Received | Filed By |
|------|---------------------------|--------|---------------|----------|
| 1 | SUMMONS + COMPLAINT | Processed | 12/06/2019 | Goffe, T. |
| 2 | ORDER - ADMINISTRATIVE<br>AO #371  Hon. George J. Silver | Processed | 12/11/2019 | Court User |
| 3 | ORDER - AMENDED<br>Administrative Order # 371  AMENDED  Hon. George J. Silver | Processed | 12/11/2019 | Court User |
| 4 | ORDER - ADMINISTRATIVE<br>AO #40 Hon. George J. Silver | Processed | 02/04/2020 | Court User |

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK**

| | |
|---|---|
| JAN GREGORY JANOWSKI, | Index No. _____ |
| Plaintiff, | |
| v. | |
| NATIONAL BOY SCOUTS OF AMERICA FOUNDATION a/k/a THE BOY SCOUTS OF AMERICA; GREATER NEW YORK COUNCILS, BOY SCOUTS OF AMERICA; TEN MILE RIVER SCOUT CAMPS a/k/a TEN MILE RIVER SCOUT CAMPS, BOY SCOUTS OF AMERICA; and DOES 1-5 whose identities are unknown to Plaintiff, | **SUMMONS**<br><br>Date Index No. Purchased: _____ |
| Defendants. | |

**TO THE ABOVE NAMED DEFENDANTS:**

**PLEASE TAKE NOTICE THAT YOU ARE HEREBY SUMMONED** to answer the Complaint, a copy of which is hereby served upon you, and to serve a copy of your Answer to the Complaint upon the undersigned attorneys listed below within twenty (20) days after the service of this Summons, exclusive of the day of service (or within thirty (30) days after the service is complete if this Summons is not personally delivered to you within the State of New York); and in the case of your failure to appear or answer, judgment by default will be taken against you for the relief demanded herein.

The basis of venue is the principal place of business of Defendant Greater New York Councils, which is 475 Riverside Drive, Room 600, New York, New York.

Dated: December 6, 2019
New York, New York

JEFF ANDERSON & ASSOCIATES, P.A.


    _/s/ Trusha Goffe_
Jeffrey R. Anderson
Trusha Goffe
Patrick Stoneking
52 Duane Street, 7th Floor
New York, NY 10007
Telephone: (646) 759-2551
Email: jeff@andersonadvocates.com
Email: trusha@andersonadvocates.com
Email: pstoneking@andersonadvocates.com

Attorneys for Plaintiff

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK**

| | |
|---|---|
| JAN GREGORY JANOWSKI, | Index No. _____ |
| Plaintiff, | **COMPLAINT** |
| v. | |
| NATIONAL BOY SCOUTS OF AMERICA FOUNDATION a/k/a THE BOY SCOUTS OF AMERICA;GREATER NEW YORK COUNCILS, BOY SCOUTS OF AMERICA; TEN MILE RIVER SCOUT CAMPS a/k/a TEN MILE RIVER SCOUT CAMPS, BOY SCOUTS OF AMERICA; and DOES 1-5 whose identities are unknown to Plaintiff, | **DEMAND FOR JURY TRIAL** |
| Defendants. | |

This lawsuit arises out of Plaintiff's significant damages from childhood sexual abuse, as described below. Plaintiff, by and through Plaintiff's attorneys, states and alleges as follows:

### PARTIES

1.     At all times material to this Complaint, Plaintiff resided in the State of New York.

2.     Whenever reference is made to any Defendant entity, such reference includes that entity, its parent companies, subsidiaries, affiliates, predecessors, and successors. In addition, whenever reference is made to any act, deed, or transaction of any entity, the allegation means that the entity engaged in the act, deed, or transaction by or through its officers, directors, agents, employees, or representatives while they were actively engaged in the management, direction, control, or transaction of the entity's business or affairs.

3.     At all times material, the National Boy Scouts of America Foundation a/k/a The Boy Scouts of America ("BSA") was and is a congressionally chartered corporation, authorized to

do business in New York, with its principal place of business located at 1325 West Walnut Hill Lane, Irving, Texas 75038. Defendant BSA includes, but is not limited to, the organization and any other organization and/or entities operating under the same or similar name with the same or similar principal place of business.

4.      At all times material, BSA had and continues to have continuous and systematic contacts throughout the State of New York including, but not limited to, New York County.

5.      At all times material, Defendant Greater New York Councils, Boy Scouts of America ("Greater New York Councils") was and continues to be a non-profit corporation authorized to conduct business and conducting business in the state of New York, with its principal place of business at 475 Riverside Drive, Room 600, New York, New York 10115. Defendant Greater New York Councils includes, but is not limited to, the organization and any other organization and/or entities operating under the same or similar name with the same or similar principal place of business.

6.      At all times material, Defendant Ten Mile River Scout Camps a/k/a Ten Mile River Scout Camps, Boy Scouts of America ("Ten Mile River") was and continues to be a non-profit corporation authorized to conduct business and conducting business in the state of New York, with its principal place of business at 1481 Crystal Lake Road, Narrowsburg, New York 12764. Defendant Ten Mile River includes, but is not limited to, the organization and any other organization and/or entities operating under the same or similar name with the same or similar principal place of business.

7.      Defendants Does 1 through 5 are unknown agents whose identities will be provided when they become known pursuant to C.P.L.R. § 1024.

4

## JURISDICTION

8.     This Court has jurisdiction pursuant to C.P.L.R. § 301 as Defendants Greater New York Councils' principal place of business is in New York and because the unlawful conduct complained of herein occurred in New York.

9.     Venue is proper pursuant to C.P.L.R. § 503 in that New York County is the principal place of business of Defendant Greater New York Councils.

## FACTUAL ALLEGATIONS

10.     At all times material, Joe Burns ("Burns") was an adult employee of the Boy Scouts. At all times material, Burns remained under the direct supervision, employ and control of Defendants. Defendants placed Burns in positions where he had access to and worked with children as an integral part of his work.

11.     Plaintiff was a youth member of Troop No. 244 in Queens and came into contact with Burns as an agent and representative of Defendants.

12.     Through his participation in the Boy Scouts, Plaintiff developed great admiration, trust and respect for scouting and came to know and trust Burns as a scout leader, a mentor and authority figure. During and through these activities, Plaintiff, as a minor and vulnerable child, was dependent on Defendants and Burns. Defendants had custody of Plaintiff and accepted the entrustment of Plaintiff and, therefore, had responsibility for Plaintiff and authority over Plaintiff.

13.     In approximately 1957 to 1958, when Plaintiff was approximately 11 to 13 years old, Burns engaged in unpermitted sexual contact with Plaintiff.

14.     Defendants knew or should have known that Burns was a danger to children before Burns sexually assaulted Plaintiff.

15.     Prior to the sexual abuse of Plaintiff, Defendants learned or should have learned

5

that Burns was not fit to work with children. Defendants, by and through their agents, servants and/or employees, became aware, or should have become aware of Burns' propensity to commit sexual abuse and of the risk to Plaintiff's safety.  At the very least, Defendants knew or should have known that they did not have sufficient information about whether or not their leaders and people working in the Boy Scouts were safe.

16.    Defendants knew or should have known that there was a risk of child sex abuse for children participating in BSA programs and activities. At the very least, Defendants knew or should have known that they did not have sufficient information about whether or not there was a risk of child sex abuse for children participating in BSA programs and activities.

17.    Defendants knew or should have known that Defendants had numerous agents who had sexually molested children. Defendants knew or should have known that child molesters have a high rate of recidivism. They knew or should have known that there was a specific danger of child sex abuse for children participating in their youth programs.

18.    Defendants have known for decades that sexual predators had infiltrated scouting, desiring positions around children, due in part to their sexual interest in children. Defendants knew or should have known of the danger that pedophiles presented to children participating in scouting before Plaintiff was abused.

19.    Defendants' own "Ineligible Volunteer Files," including a subcategory referred to as the "Perversion Files," collected and maintained in secrecy for at least seventy years, reveal that pedophiles are drawn to scouting and that the Boy Scouts is a sanctuary for child molesters.

20.    Defendants' "Perversion Files" demonstrate that the Boy Scouts are aware and have been aware that pedophiles are attracted to scouting, the distinctive characteristics of scouting render scouts particularly susceptible to pedophiles who are given authority, and the actual and

apparent authority of persons who serve in scoutmaster roles are used by pedophiles to sexually abuse young scouts in and out of scouting.

21.     Despite this knowledge, Defendants negligently deemed that Burns was fit to work with children; and/or that any previous suitability problems Burns had were fixed and cured; and/or that Burns would not sexually molest children; and/or that Burns would not injure children.

22.     Defendants owed Plaintiff a duty of reasonable care because they had superior knowledge about the risk that Burns posed to Plaintiff, the risk of abuse in general in their programs and/or the risks that their facilities posed to minor children.

23.     Defendants owed Plaintiff a duty of reasonable care because Defendants' actions created a foreseeable risk of harm to Plaintiff. As a vulnerable child participating in the programs and activities Defendants offered to minors, Plaintiff was a foreseeable victim. Additionally, as a vulnerable child who Burns had access to through Defendants' facilities and programs, Plaintiff was a foreseeable victim.

24.     Defendants also breached their duty to Plaintiff by actively maintaining and employing Burns in a position through which Burns had access to children, including Plaintiff, and power and control over children, including Plaintiff.

25.     Each Defendant breached its duties to Plaintiff. Defendants failed to use ordinary care in determining whether their facilities were safe and/or determining whether they had sufficient information to represent their facilities as safe. Defendants' breach of their duties include, but are not limited to: failure to protect Plaintiff from a known danger, failure to have sufficient policies and procedures in place to prevent child sex abuse, failure to properly implement policies and procedures to prevent child sex abuse, failure to take reasonable measures to ensure that policies and procedures to prevent child sex abuse were working, failure to adequately inform

7

families and children of the risks of child sex abuse, failure to investigate risks of child molestation, failure to properly train the employees at institutions and programs within Defendants' geographical confines, failure to train the minors within Defendants' geographical confines about the dangers of sexual abuse by leaders and/or scoutmasters, failure to have any outside agency test their safety procedures, failure to protect the children in their programs from child sex abuse, failure to adhere to the applicable standard of care for child safety, failure to investigate the amount and type of information necessary to represent the institutions, programs, leaders and people as safe, failure to train their employees properly to identify signs of child molestation by fellow employees, failure by relying upon mental health professionals, and/or failure by relying on people who claimed that they could treat child molesters.

26.     Defendants also breached their duty to Plaintiff by failing to warn Plaintiff and Plaintiff's family of the risk that Burns posed and the risks of child sexual abuse in the Boy Scouts of America. They also failed to warn them about any of the knowledge that Defendants had about child sexual abuse, including the information contained in the "Ineligible Volunteer" Files.

27.     Defendants additionally violated a legal duty by failing to report known and/or suspected abuse of children by Burns and/or its other agents to the police and law enforcement.

28.     As a direct result of Defendants' negligence as described herein, Plaintiff has suffered and will continue to suffer, great pain of mind and body, severe and permanent emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, humiliation, physical, personal and psychological injuries. Plaintiff was prevented, and will continue to be prevented, from performing normal daily activities and obtaining the full enjoyment of life; and/or has incurred and will continue to incur expenses for psychological treatment, therapy, and counseling, and, on information and belief has and/or will incur loss of income and/or

loss of earning capacity.

## COUNT I: NEGLIGENCE

29.     Plaintiff incorporates all consistent paragraphs of this Complaint as if fully set forth under this Count.

30.     Each Defendant owed Plaintiff a duty of reasonable care to protect the Plaintiff from injury.

31.     Each Defendant owed Plaintiff a duty of care because each Defendant had a special relationship with Plaintiff.

32.     Defendants also had a duty arising from the special relationship that existed with Plaintiff, Plaintiff's parents, and other parents of young, innocent, vulnerable children in the Boy Scouts of America to properly train and supervise its agents. This special relationship arose because of the high degree of vulnerability of the children entrusted to their care. As a result of this high degree of vulnerability and risk of sexual abuse inherent in such a special relationship, Defendants had a duty to establish measures of protection not necessary for persons who are older and better able to safeguard themselves.

33.     Each Defendant owed Plaintiff a duty to protect Plaintiff from harm because each Defendant also had a special relationship with Burns.

34.     Defendants owed Plaintiff a duty of reasonable care because they solicited youth and parents for participation in their youth programs; encouraged youth and parents to have the youth participate in their programs; undertook custody of minor children, including Plaintiff; promoted their facilities and programs as being safe for children; held their agents, including Burns, out as safe to work with children; encouraged children to spend time with their agents; and/or encouraged their agents, including Burns, to spend time with, interact with, and recruit

9

children.

35.     By holding Burns out as safe to work with children, and by undertaking the custody, supervision of, and/or care of the minor Plaintiff, each Defendant entered into a fiduciary relationship with the minor Plaintiff.  As a result of Plaintiff being a minor, and by Defendants undertaking the care and guidance of the then vulnerable minor Plaintiff, each Defendant held a position of empowerment over Plaintiff.

36.     Further, Defendants, by holding themselves out as being able to provide a safe environment for children, solicited and/or accepted this position of empowerment.  Defendants thus entered into a fiduciary relationship with Plaintiff. Defendants exploited their position of empowerment, putting Plaintiff at risk to be sexually assaulted.

37.     By accepting custody of the minor Plaintiff, each Defendant established an *in loco parentis* relationship with Plaintiff and in so doing, owed Plaintiff a duty to protect Plaintiff from injury.

38.     By establishing and/or operating BSA, Greater New York Councils, and Ten Mile River, accepting the minor Plaintiff as a participant in their programs, holding their facilities and programs out to be a safe environment for Plaintiff, accepting custody of the minor Plaintiff *in loco parentis*, and by establishing a fiduciary relationship with Plaintiff, Defendants entered into an express and/or implied duty to properly supervise Plaintiff and provide a reasonably safe environment for children, who participated in their programs. Defendants owed Plaintiff a duty to properly supervise Plaintiff to prevent harm from foreseeable dangers. Defendants had the duty to exercise the same degree of care over minors under their control as a reasonably prudent person would have exercised under similar circumstances.

39.     By establishing and operating BSA, Greater New York Councils, and Ten Mile

10

River, which offered educational programs to children, and by accepting the enrollment and participation of the minor Plaintiff as a participant in those educational programs, Defendants owed Plaintiff a duty to properly supervise Plaintiff to prevent harm from generally foreseeable dangers.

40.    Each Defendant owed Plaintiff a duty to protect Plaintiff from harm because Defendants invited Plaintiff onto their property and Burns posed a dangerous condition on Defendants' property.

41.    Each Defendant breached its duties to Plaintiff by failing to use reasonable care. Each Defendant's failures include, but are not limited to, failing to properly supervise Burns, failing to properly supervise Plaintiff and failing to protect Plaintiff from a known danger.

42.    As a direct result of the foregoing, Plaintiff sustained physical, emotional, and psychological injuries, along with pain and suffering.

## COUNT II: NEGLIGENT HIRING

43.    Plaintiff incorporates all consistent paragraphs of this Complaint as if fully set forth under this count.

44.    At all times material, Burns was employed by Defendants and was under each Defendant's direct supervision, employ, and control when he committed the wrongful acts alleged herein. Burns engaged in the illegal conduct while acting in the course and scope of his employment with Defendants and/or accomplished the sexual abuse by virtue of his job-created authority.

45.    Defendants negligently hired and/or retained Burns and/or negligently placed Burns in a position to cause foreseeable harm, which Plaintiff would not have been subjected to had Defendants taken reasonable care in its pre-hiring investigation of Burns.

11

46.     Defendants negligently hired Burns with knowledge of Burns' propensity for the type of behavior, which resulted in Plaintiff's injuries in this action. Defendants failed to investigate Burns' past history of inappropriate conduct and, through the exercise of reasonable diligence, should have known of Burns' propensity for child sexual abuse. Defendant was required to make an appropriate investigation of Burns and failed to do so. An appropriate investigation would have revealed the unsuitability of Burns for employment and it was unreasonable for Defendants to hire Burns in light of the information they knew or should have known.

47.     As a direct result of the foregoing, Plaintiff sustained physical, emotional, and psychological injuries, along with pain and suffering.

## COUNT III: NEGLIGENT TRAINING AND SUPERVISION

48.     Plaintiff incorporates all consistent paragraphs of this Complaint as if fully set forth under this count.

49.     At all times material, Burns was employed by Defendants and was under each Defendant's direct supervision, employ, and control when he committed the wrongful acts alleged herein. Burns engaged in the wrongful conduct while acting in the course and scope of his employment with Defendants and/or accomplished the sexual abuse by virtue of his job-created authority.

50.     Defendants had a duty, arising from their employment of Burns, to ensure that he did not sexually molest children.

51.     Further, Defendants owed a duty to train and educate employees and administrators and establish adequate and effective policies and procedures calculated to detect, prevent, and address inappropriate behavior and conduct between adults and children.

52.     Defendants were negligent in the training, supervision, and instruction of their

FILED: NEW YORK COUNTY CLERK 12/06/2019 03:35 PM
NYSCEF DOC. NO.

INDEX NO. 950235/2019

RECEIVED NYSCEF: 12/06/2019

Case 1:20-cv-01541-CM    Document 1-1    Filed 02/26/20    Page 15 of 21

employees. Defendants failed to timely and properly educate, train, supervise, and/or monitor their agents or employees with regard to policies and procedures that should be followed when sexual abuse of a child is suspected or observed.

53.     Defendants were additionally negligent in failing to supervise, monitor, chaperone, and/or investigate Burns and/or in failing to create, institute, and/or enforce rules, policies, procedures, and/or regulations to prevent Burns' sexual abuse of Plaintiff.

54.     In failing to properly supervise Burns, and in failing to establish such training procedures for employees and administrators, Defendants failed to exercise the degree of care that a reasonably prudent person would have exercised under similar circumstances.

55.     As a direct result of the foregoing, Plaintiff sustained physical, emotional, and psychological injuries, along with pain and suffering.

## COUNT IV: NEGLIGENT RETENTION

56.     Plaintiff incorporates all consistent paragraphs of this Complaint as if fully set forth under this count.

57.     Defendants became aware or should have become aware of Burns' propensity for child sexual abuse and failed to take any further action to remedy the problem and failed to investigate or remove Burns from working with children.

58.     Defendants negligently retained Burns with knowledge of Burns' propensity for the type of behavior, which resulted in Plaintiff's injuries in this action.

59.     Defendants negligently retained Burns in a position where he had access to children and could foreseeably cause harm which Plaintiff would not have been subjected to had Defendants taken reasonable care.

60.     In failing to timely remove Burns from working with children or terminate the

13

employment of Burns, Defendants failed to exercise the degree of care that a reasonably prudent person would have exercised under similar circumstances.

61.     As a direct result of the foregoing, Plaintiff sustained physical, emotional, and psychological injuries, along with pain and suffering.

## PRAYER FOR RELIEF

WHEREFORE, based on the foregoing causes of action, Plaintiff prays for judgment against Defendants in an amount that will fully and fairly compensate Plaintiff for Plaintiff's injuries and damages and for any other relief the Court deems appropriate. The amount of damages sought in this Complaint exceeds the jurisdictional limits of all lower courts which would otherwise have jurisdiction.

## JURY DEMAND

Plaintiff demands a trial by jury of all issues so triable. Pursuant to §4 of the New York Child Victims Act, Plaintiff is entitled to a trial preference.

Dated: December 6, 2019
New York, New York

**JEFF ANDERSON & ASSOCIATES, P.A.**


    */s/ Trusha Goffe*
Jeffrey R. Anderson
Trusha Goffe
Patrick Stoneking
52 Duane Street, 7th Floor
New York, NY 10007
Telephone: (646) 759-2551
Email: jeff@andersonadvocates.com
Email: trusha@andersonadvocates.com
Email: pstoneking@andersonadvocates.com

Attorneys for Plaintiff


14

Case 1:20-cv-01541-CM    Document 1-1    Filed 02/20/20    Page 17 of 21



STATE OF NEW YORK
**UNIFIED COURT SYSTEM**
111 CENTRE STREET
NEW YORK, N.Y. 10013
(646) 386-4200

**LAWRENCE K. MARKS**
Chief Administrative Judge

**GEORGE J. SILVER**
Deputy Chief Administrative Judge
New York City Courts

## ADMINISTRATIVE ORDER #371

By the authority vested in me as Deputy Chief Administrative Judge of the courts within New York City, and as the coordinating judge of all cases filed under the Child Victims Act[1] (the "CVA") within that jurisdiction, I hereby order as follows:

1. This Order applies to all cases filed or hereafter filed in the Supreme Courts in and for the counties of Bronx, Kings, New York, Queens, and Richmond pursuant to the CVA, including any such matters filed before the one-year window commenced on August 14, 2019, and which were then stayed pending the opening of the window on August 14, 2019.

2. While a steering committee negotiates a Case Management Order to address the efficient prosecution and defense of cases filed under the CVA, all Preliminary Conferences currently scheduled or requested as of the effective date of this Order, and any requests for Preliminary Conferences made after the effective date of this Order are adjourned to a control date of January 31, 2020.[2]

3. The time to respond to any discovery demands served by the parties as of the effective date of this Order is adjourned without a date. No demands for discovery shall be served by any party until further Order of this Court.

4. Plaintiffs' time to respond to stipulations and orders that consent to or direct the production of identifying information, consisting of a plaintiff's name (including maiden name, if any), date of birth, social security number, parents and/or guardian's names, current address, and address at the time of the alleged abuse, for plaintiffs proceeding under pseudonyms is extended to December 20, 2019. Plaintiffs shall provide such identifying information to defense counsel in a manner other than disclosure in a public filing on NYSCEF and as

---

[1] L. 2019 c.11.

[2] Parties may make an application to extend this, and other deadlines, as necessary.

agreed to by the parties. Nothing in this Order prevents plaintiffs from voluntarily providing such identifying information at any time.

5. All papers in opposition to any Order to Show Cause or Notice of Motion, including motions to dismiss under CPLR §3211 or §3212, but excluding motions to proceed anonymously or by pseudonym, are adjourned until Tuesday, January 31, 2020. Should the motion(s) not be resolved and withdrawn by the parties as of that date, the Court will set any additional due dates as necessary. No motions, other than motions to proceed anonymously or by pseudonym, shall be filed prior to January 31, 2020 without permission of the Court. As such, no motions to dismiss under CPLR §3211 or §3212 shall be filed prior to January 31, 2020.

6. The time to answer, move against, or otherwise respond to any complaint that has been served as of the effective date of this Order is extended until further Order of the Court. This Order supersedes any due dates for answers or motions previously stipulated to by the parties and/or ordered by this Court.

7. The time to answer, move against, or otherwise respond to any complaint that is served after the effective date of this Order, but prior to January 31, 2020, shall be extended until a date stipulated to by the parties or as directed by further Order of the Court.

8. Notwithstanding any stipulation or Court Order to the contrary, no motion to sever shall be filed prior to January 31, 2020. Consistent with the CPLR, motions to sever may be filed after January 31, 2020.

9. Counsel shall make a good faith effort to resolve any motions to dismiss or motions to sever prior to filing such motions.

Dated: December 11, 2019

_George J. Silver_

Hon. George J. Silver
Deputy Chief Administrative Judge
New York City Courts



STATE OF NEW YORK
**UNIFIED COURT SYSTEM**
111 CENTRE STREET
NEW YORK, N.Y. 10013
(646) 386-4200

**LAWRENCE K. MARKS**
Chief Administrative Judge

**GEORGE J. SILVER**
Deputy Chief Administrative Judge
New York City Courts

## ADMINISTRATIVE ORDER #371
## AMENDED

By the authority vested in me as Deputy Chief Administrative Judge of the courts within New York City, and as the coordinating judge of all cases filed under the Child Victims Act[1] (the "CVA") within that jurisdiction, I hereby order as follows:

1. This Order applies to all cases filed or hereafter filed in the Supreme Courts in and for the counties of Bronx, Kings, New York, Queens, and Richmond pursuant to the CVA, including any such matters filed before the one-year window commenced on August 14, 2019, and which were then stayed pending the opening of the window on August 14, 2019.

2. While a steering committee negotiates a Case Management Order to address the efficient prosecution and defense of cases filed under the CVA, all Preliminary Conferences currently scheduled or requested as of the effective date of this Order, and any requests for Preliminary Conferences made after the effective date of this Order are adjourned to a control date of January 31, 2020.[2]

3. The time to respond to any discovery demands served by the parties as of the effective date of this Order is adjourned without a date. No demands for discovery shall be served by any party until further Order of this Court.

4. Plaintiffs' time to respond to stipulations and orders that consent to or direct the production of identifying information, consisting of a plaintiff's name (including maiden name, if any), date of birth, social security number, parents and/or guardian's names, current address, and address at the time of the alleged abuse, for plaintiffs proceeding under pseudonyms is extended to December 20, 2019. Plaintiffs shall provide such identifying information to

---

[1] L. 2019 c.11.

[2] Parties may make an application to extend this, and other deadlines, as necessary.

defense counsel in a manner other than disclosure in a public filing on NYSCEF and as agreed to by the parties. Nothing in this Order prevents plaintiffs from voluntarily providing such identifying information at any time.

5. All papers in opposition to any Order to Show Cause or Notice of Motion, including motions to dismiss under CPLR §3211 or §3212, but excluding motions to proceed anonymously or by pseudonym, are adjourned until January 31, 2020. Should the motion(s) not be resolved and withdrawn by the parties as of that date, the Court will set any additional due dates as necessary. No motions, other than motions to proceed anonymously or by pseudonym, shall be filed prior to January 31, 2020 without permission of the Court. As such, no motions to dismiss under CPLR §3211 or §3212 shall be filed prior to January 31, 2020.

6. The time to answer, move against, or otherwise respond to any complaint that has been served as of the effective date of this Order is extended until further Order of the Court. This Order supersedes any due dates for answers or motions previously stipulated to by the parties and/or ordered by this Court.

7. The time to answer, move against, or otherwise respond to any complaint that is served after the effective date of this Order, but prior to January 31, 2020, shall be extended until a date stipulated to by the parties or as directed by further Order of the Court.

8. Notwithstanding any stipulation or Court Order to the contrary, no motion to sever shall be filed prior to January 31, 2020. Consistent with the CPLR, motions to sever may be filed after January 31, 2020.

9. Counsel shall make a good faith effort to resolve any motions to dismiss or motions to sever prior to filing such motions.

Dated: December 11, 2019

_George J. Silver_
Hon. George J. Silver
Deputy Chief Administrative Judge
New York City Courts



STATE OF NEW YORK
**UNIFIED COURT SYSTEM**
111 CENTRE STREET
NEW YORK, N.Y. 10013
(646) 386-4200

**LAWRENCE K. MARKS**
Chief Administrative Judge

**GEORGE J. SILVER**
Deputy Chief Administrative Judge
New York City Courts

## ADMINISTRATIVE ORDER #40

By the authority vested in me as Deputy Chief Administrative Judge of the courts within New York City, and as the coordinating judge of all cases filed under the Child Victims Act (the "CVA") within that jurisdiction, I hereby order as follows:

1. Following consultation with a steering committee that continues to negotiate a Case Management Order to address the efficient prosecution and defense of cases filed under the CVA, the adjournment of all CVA matters is extended to a control date of Tuesday, February 11, 2020.

2. Administrative Order #371 remains in effect until February 11, 2020.

3. The steering committee will assemble for a meeting on February 11, 2020 at 2:00 PM.

Dated: February 4, 2020

Hon. George J. Silver
Deputy Chief Administrative Judge
New York City Courts